18914

Andrew F. FORD, Respondent, v. ALLIED CHEMICAL CORPO-
RATION and the Travelers Insurance Company, Appellants

(167 S. E. (2d) 564)

562

*Messrs. Whaley, McCutchen, Blanton & Richardson,* of Columbia, *for Appellants,*

*Messrs. Law, Kirkland, Aaron & Alley,* of Columbia *for Respondent,*

May 5, 1969.

BUSSEY, Justice.

This is a Workmen's Compensation case, the appeal being by the employer from an order of the circuit court affirming a compensation award of the Industrial Commission in favor of the injured employee. The award was for temporary total disability for the period from February 3, 1966 through April 25, 1966, and for certain medical benefits. The employer denied liability solely on the basis of the following provision contained in Sec. 72-305 of the Code of Laws:

"The refusal of an employee to accept medical, hospital, surgical or other treatment when provided by the employer or ordered by the Commission shall bar such employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Commission the circumstances justified the refusal, in which case the Commission may order a change in the medical or hospital service."

The award of the hearing Commissioner was affirmed without modification by a majority of the Commission and contained in the findings of fact is the following:

"4. That, in the opinion of this Commissioner, claimant did not refuse medical as provided. Furthermore, if seeking medical attention for relief of his condition when sufficient medical treatment had not been provided by the attending

physician could be construed as refusal of medical, the circumstances were such as to justify the refusal."

It is contended by the employer that the foregoing findings are not supported by any competent evidence.

Whether an employee in fact refused medical treatment and, if he did, whether or not he was justified in doing so are factual issues for determination by the Commission, and its conclusions thereabout are final unless the evidence is susceptible of only one reasonable inference, in which event such questions become issues of law rendering the decision of the Commission subject to review. Cf. *Ward v. Dixie Shirt Co.*, 223 S. C. 448, 76 S. E. (2d) 605.

We, accordingly, proceed to review the evidence, and state the facts and the reasonable inferences therefrom, in the light most favorable to claimant, as we are required to do in determining whether the findings of the Commission are supported by competent evidence.

Claimant was injured about 3 o'clock on the afternoon of February 3rd, sustaining an injury to his head and neck when struck by a rack falling off a fork truck. He was taken to the emergency room of the hospital and some time later that afternoon was seen by Dr. Graham, the regular physician for the employer, who was a general practitioner. In the emergency room, Dr. Graham gave him an injection for pain, caused certain X-rays to be made and, at about 9 o'clock that night, claimant was admitted to the hospital. Dr. Graham, realizing that the injury to claimant's neck required the services of an orthopedic surgeon, after calling one or more whom he was unable to contact, called in Dr. Edwards who was an orthopedic surgeon. Claimant was put in traction and kept in the hospital until the following Sunday afternoon, February 6th, when it was felt that he could be discharged with a neck collar and allowed to return to work on Monday morning. Claimant was in so much pain that he was only able to work a half day on Monday, February 7th, and was unable to work on Tuesday. He reported for work on Wednesday and Thursday, but did not

work a full day either of those days. He reported to Dr. Graham's office for treatment on Monday, Tuesday and Wednesday, and was given some therapy by Dr. Graham, who testified that on Wednesday he didn't feel there was any need to treat him much more, but was keeping an eye on claimant and requested claimant to return to his office on Friday so that he could see him again.

Claimant had a pre-arranged appointment with Dr. Edwards, who had been called in by Dr. Graham, for Thursday, the 10th, which he kept. Claimant was then suffering not only pain in his neck but with severe headaches, which symptoms were communicated to Dr. Edwards, but the record clearly indicates that Dr. Edwards was not impressed with his complaints, and suggested only that he buy some aspirin and return to work. Dr. Edwards, however, gave him an appointment for the following Thursday simply as a matter of routine. Upon leaving Dr. Edwards' office, claimant's painful condition continued to worsen to the extent that on Thursday night his family contacted a family physician and through him arrangements were made for claimant to see Dr. Kimbrough, an orthopedic surgeon connected with Moore Clinic. Dr. Kimbrough saw him on Friday, the 11th, and upon examination concluded that claimant was definitely disabled and should not be returned to work. He at first thought that claimant could be successfully treated without putting him back in the hospital, but finally concluded that hospitalization was necessary and claimant was admitted to the hospital on the 14th, where he remained for eight days undergoing treatment by Dr. Kimbrough, including traction. Claimant was not finally discharged by Dr. Kimbrough as being able to return to work until April 25th, on which date claimant, in fact, returned, he being still employed by the employer involved in this case.

The qualifications of Dr. Kimbrough and the competency of his treatment of the claimant are expressly conceded by the appellant. It is not urged that claimant was not in fact in need of hospitalization. In fact, Dr. Kimbrough's testi-

mony as to the need for hospitalization, treatment and period and extent of disability is not expressly contradicted or challenged.

Claimant did not keep his routine appointment with Dr. Graham for Friday the 11th, nor his routine appointment with Dr. Edwards on Thursday the 17th, he being under the care of Dr. Kimbrough on both dates and in the hospital on the latter date.

On February 14th, the carrier for the employer wrote the claimant a letter which was received by him while in the hospital. Such letter called the attention of the claimant to the statutory provision here relied on; stated that the feeling of the adjuster was that adequate medical treatment had been offered and furnished claimant; that any departure therefrom was done at claimant's risk, and the letter closed with requesting that he immediately put himself back under the care of Dr. Graham. Such request was not complied with by claimant.

In fairness to Dr. Graham the record reflects that he was attentive to the claimant and likely did in the way of treatment what any other competent general practitioner would have done. On the other hand, there is evidence that the claimant was in dire need of a specialist and special treatment. Likewise, in fairness to Dr. Edwards it should be pointed out that his testimony is in sharp conflict with that of the claimant as to the complaints made by and the condition of, claimant when Dr. Edwards admittedly treated claimant rather summarily; simply advised aspirin and suggested a return to work. With respect to this conflict in evidence, however, the hearing Commissioner in a narrative account of the facts made the following statement:

"On February 10, 1966, claimant had kept an appointment with Dr. Thomas E. Edwards, whose services had previously been engaged through the company doctor, Bothwell Graham, III. Dr. Edwards was fully informed by the claimant of 'severe headaches' for which aspirins were pre-

scribed. Later in the night, claimant's condition worsened to the extent that medical attention was needed. Since claimant had, that very morning, related his condition to Dr. Edwards with no help offered, other than simply aspirins, he, of his own volition, did seek other medical treatment."

The credibility of the witnesses was, of course, for the hearing Commissioner and ultimately the full Commission. Under the foregoing facts and circumstances, the question naturally arises as to what, if any, medical treatment contemplated by the Act and offered by the employer did the claimant refuse. Dr. Graham's testimony was to the effect that he had done about all he thought he could do for the claimant, and, under the claimant's version of his appointment with Dr. Edwards, which the Commission obviously accepted, the only treatment he refused from Dr. Edwards was the offer of another routine appointment a week hence, he being, in the meantime, in great pain and real need of effective medical treatment. We think the foregoing is quite sufficient to show that the ultimate findings and conclusions reached by the Commission have quite adequate support in the evidence.

Two additional questions are raised by the appellant-employer. It appears that while claimant was in the hospital under the care of Dr. Kimbrough, two of the employer's personnel came to see him. On the hearing the employer sought to prove through these parties that claimant had stated that he was not concerned about his medical expenses as he had some collateral source from which such could be paid. The hearing Commissioner excluded such evidence and it is now urged that such was error, it being contended that the proffered evidence would have proved a deliberate and knowing waiver on the part of the claimant to any benefits under the Workmen's Compensation Act. Such contention is, we think, clearly without merit. Even if it be conceded that the claimant had some collateral source with which to pay his medical bills and that for such reason he was not at the time of the particular conversation con-

cerned about his medical bills, such would be insufficient to prove a waiver of his rights under the compensation act.

The award of the Commission gave the employer credit for the half day he worked on February 7th.

It is now asserted that there was error in failing to also give the employer credit for Tuesday and Wednesday, February 8th and 9th. The record does show that the claimant worked some on those days, but not how long, or how much he was paid. Moreover, the record fails to indicate whether this question was presented to either the full Commission on review or the circuit court upon appeal from the award of the Commission. In brief, in the present state of the record, this contention requires no consideration by this court.

We find no prejudicial error and the judgment of the court below is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.