1561

L. L. DeBRUHL, Respondent v. KERSHAW COUNTY SHERIFF'S DE-
PARTMENT, Employer/Self-Insured Under the South Carolina Associ-
ation of Counties; Self-Insured Fund, Appellant.

(397 S.E. (2d) 782)

Court of Appeals

*Ernest J. Nauful, Jr.,* and *Andrew F. Lindemann, Nauful
& Ellis,* Columbia, *for appellant.*

*George W. Speedy,* of *Furman, Speedy & Stegner,* Camden,
*for respondent.*

Heard Oct 10, 1990.

Decided Oct. 29, 1990.

GARDNER, Judge:

This is a worker's compensation case in which L.L. De-Bruhl (the claimant) seeks compensation for a heart attack. The Hearing Commissioner denied benefits, finding that the heart attack was not compensable under the "heart attack" cases. The Full Commission affirmed. The circuit court, by the appealed order, reversed, awarding total disability and medical benefits for life. We reverse and remand.

## ISSUES

The sole issue of merit is whether there is substantial evidence of record to support the Commission's denial of benefits.

## FACTS

The claimant is the Sheriff of Kershaw County having been first elected in 1967. He seeks reelection this year. The Sheriff testified his *normal* work week was 90 hours and that he worked seven days a week. The claimant testified that he investigated all fatalities in the county until his heart problems began.

The claimant admitted that his job as sheriff is a stressful one, even under normal conditions.

The claimant expressed the belief that his heart problems were the result of two stressful situations. First, between 1971 and 1974, three officers in the Sheriff's Department were killed while on duty. It was at this time the Sheriff began smoking five packs of cigarettes a day. Second, in 1983, the grand jury investigated allegations of political corruption in Kershaw County, including the Sheriff's Department. The allegations included payoffs and Swiss bank accounts. The grand jury cleared everyone but it was embarrassing and stressful for the claimant and his family. As stated, the claimant believes that these events marked the beginning of his heart attack.

The claimant's treating heart specialist testified at length. This physician attributed the claimant's heart problem to a myriad of factors, including job related stress. The doctor's other testimony was impressive. The claimant clearly had

four major heart factors for heart problems: high blood pressure, heavy smoking, a type "A" personality and a significant family history of heart problems. The claimant's family has many heart problems. His three sisters have heart problems and high blood pressure. One sister has had five by-pass operations; one has a pacemaker and one suffers from angina. One brother died of a heart attack at an early age. The claimant also suffers from elevated cholesterol and elevated glucose, both of which are potential risk factors. He is also overweight.

In making the above comments, however, the doctor related the claimant's job related stress to his heart condition. But he did not link the heart problem to any particular event or series of events. The clear implication of his testimony is that the stress problem was a continuing problem over the twenty years of the Sheriff's tenure.

During cross-examination, the doctor gave the following testimony:

> Q. He has four of those major risk factors; and in addition to those risk factors, the normal stressors of his job have been a contributing factor to the development of his coronary artery disease.
> A. That is my opinion.
> Q. All right, sir. Not any unusual stressors, but the normal stressors of his job.
> A. Of his particular job, yes.

The record reflects that in August 1984, the claimant suffered chest pains due to angina. Prior to this time, his only significant health problem was high blood pressure which began in 1970. He was hospitalized for this problem at least once and possibly more often.

In October 1984, the claimant underwent angioplasty to dilate a blocked artery. He suffered an angina attack again in November 1984 and underwent angioplasty again for the same artery. The problem, however, was with a different artery. The medical testimony establishes that the claimant had problems with three different coronary arteries during these 1984 treatments.

After these 1984 problems, the claimant, in some respects, altered his work schedule. He continued to work between 12

and 13 hours a day and continued to be on call 24 hours per day. He continued to receive calls on all fatalities in the county, but would often have a deputy investigate the fatality if the call came in late at night. The claimant testified that he made this change because of his heart problems. Still, there was nothing unusual about his responding to calls in the very early morning hours. The claimant also testified that he reduced his smoking.

On April 19, 1986, the claimant had the heart attack for which he seeks compensation. On this particular morning his day started at 6:30 a.m. He got home around 12:00 midnight and upon arriving, he heard a death call on the radio. Since he was already up, he responded to the call rather than waking up a deputy. An additional reason for investigating the fatality was that the claimant knew the victim's family. The claimant began experiencing chest pains soon after arriving at the scene of the death.

The claimant spent nine days in the hospital. He received a pacemaker in addition to other treatment. He returned to full-time work in July 1986. Since that time he has changed his procedure so that he seldom responds to late-night calls. He also tries to spend more time at home resting, but has varying degrees of success. The claimant continued to draw his full salary after his heart attack and continued to do so at the time of the compensation hearing.

The claimant seeks total and permanent disability or, in the alternative, "permanency from the heart attack."

The Hearing Commissioner concluded that the claimant's heart attack was not compensable. She found his heart attack was not induced by "sudden, unexpected strain or overexertion in the performance of his duties of his employment or by unusual and extraordinary conditions in the employment." She made similar findings as to whether his employment aggravated a preexisting heart condition. The order of the Hearing Commissioner was affirmed by the Full Commission.

On appeal to the circuit court, the claimant challenged the failure of the Commission to find that the heart attack resulted from unusual conditions and challenged the failure to award permanent and total disability. The ruling of the appealed order recites that it is based upon the "any evidence" standard of review. The circuit judge found the facts were not

in dispute and the only issue was the application of the law to the facts. The holding of the appealed order is that the claimant was called on April 18 and 19, 1986, to perform work from approximately 6:00 a.m. until 2:00 a.m. the following morning or 20 hours of work. The trial judge found, "[t]his is unusual or unexpected strain to any individual. This coupled with the fact that he was investigating the death of a friend could only cause further unexpected strain. . . ."

The trial court by the appealed order reversed the Full Commission, ordering payment of total disability payments and medical expenses for life. The employer filed several motions under Rule 59(3), which were denied.

### DISCUSSION

The judicial review of this worker's compensation decision is governed by the "substantial evidence" rule of Section 1-23-380(g) and (5). Section 1-23-380(g) provides in pertinent part that the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Section 1-23-380(g)(5) provides in pertinent part that the court may reverse or modify the decision of the Commission if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions or decisions which are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached to justify its action. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981).

In workers compensation cases, the Full Commission is the ultimate fact finder. *Hunter v. Patrick Constr. Co.*, 289 S.C. 46, 344 S.E. (2d) 613 (1986). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Full Commission. *Ford v. Allied Chem. Co.*, 252 S.C. 561, 167 S.E. (2d) 564 (1969). It is not the task of courts to weigh the evidence as found by the Commission. *Ellis v. Spartan Mills*, 276 S.C. 216, 277 S.E. (2d) 590 (1981).

If a heart attack results as a consequence of ordinary exertion required in the performance of the duties of the employment in the ordinary and usual manner, and

without any outward untoward event, it is not compensable as an accident. And the fact that due to a weakened heart condition the exertion required by the ordinary performance of the work is too great for the particular employee who undertakes to perform it does not make it a compensable accident. *Kearse v. South Carolina Wildlife Resources Dept.*, 236 S.C. 540, 115 S.E. (2d) 183 (1960). A heart attack suffered by an employee constitutes a compensable "accident" if it is induced by unexpected strain or overexertion in the performance of the duties of the employee's employment or by unusual and extraordinary conditions in the employment. *Id.*

We hold there is more than substantial evidence of record to support the finding of the Full Commission that the claimant in this case did not suffer a heart attack as a result of unexpected or overexertion in the performance of his duties or by unusual and extraordinary conditions in his employment.

The trial judge held the hours worked by the claimant on April 18 and 19, 1986 would be an unusual and unexpected strain on anyone. He further held that this coupled with the fact that he was investigating the death of a friend could only cause additional unexpected strain. A careful review of the record negates the finding of the trial judge that this investigation of a night fatality was unusual and unexpected for the Sheriff of Kershaw County. Being a sheriff of a county in South Carolina is a stressful job. Stress comes with the job.

As we have pointed out, it is not the task of the Court of Common Pleas or this court to weigh the evidence as found by the Commission. In these cases, the Full Commission is the ultimate finder of the facts and unless the record reflects that the findings of the Full Commission are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, the trial court and this court should not substitute its view of the facts for that of the Full Commission. This is well-established law in this state.

In the case before us, the claimant was and is and hopes to continue to be the Sheriff of Kershaw County. He admits that being sheriff is a stressful job. The claimant is a heavy smoker with high blood pressure and has a significant family history of heart problems. We concur with the finding of the Hearing Commissioner and the Full Commission that the

claimant's heart attack was not induced by unexpected strain or overexertion in the performance of his duties or by any unusual and extraordinary conditions in the claimant's employment. Accordingly, we hold that the appealed order of the circuit court is erroneous; it is reversed.

Because we hold that the claimant did not suffer a compensable accident under the Workers' Compensation law, we do not address the issue presented by the employer about whether the claimant was covered as an employee under the Workers' Compensation Act at the time he suffered a heart attack.

## CONCLUSION

Because we concur in the finding of the Hearing Commissioner and the Full Commission to the effect that the claimant's heart attack was not the result of an unexpected strain or overexertion in the performance of the duties of his employment or by unusual or extraordinary conditions in his employment, we reverse the appealed order and reinstate the Order of the Workers' Compensation Commission. The case is reversed and remanded for entry of judgment in accordance with this decision.

Reversed and remanded.

SHAW and BELL, JJ., concur.