516 S.E.2d 453

Eugene JENNINGS, Deceased, Mrs. Eddie
Louise Jennings, Widow, Respondent,

v.

CHAMBERS DEVELOPMENT COMPANY, Employer,
and Pennsylvania Manufacturers Association
Insurance Company, Carrier, Appellants.

No. 2877.

Court of Appeals of South Carolina.

Reheard Jan. 12, 1999.

Decided Feb. 1, 1999.

Rehearing Denied June 14, 1999.

Certiorari Denied Sept. 24, 1999.

250

252

Harry B. Gregory, Jr., and Johnnie W. Baxley, III, both of Rogers, Townsend & Thomas, of Columbia, for appellants.

Clyde C. Dean, Jr., of Orangeburg; and Preston F. McDaniel, of Columbia, for respondent.

## ORDER

PER CURIAM:

The Court granted the Petition for Rehearing in this matter and held oral argument. After careful consideration, the Court hereby orders that the opinion heretofore filed be withdrawn and the attached opinion be substituted therefore.

HOWARD, Judge:

Mrs. Eddie Louise Jennings (claimant) brought this workers' compensation claim for death benefits following the death of her husband, Eugene Jennings. The single commissioner denied the claim, concluding Jennings died from a ruptured

thoracic aneurysm which was not the result of a work-related accident. The full commission agreed. The circuit court reversed, holding the commission erred in requiring claimant to prove a compensable injury and not applying the "unexplained death" presumption. The circuit court also ruled the commission erred in excluding certain pictures and testimony falling within the *res gestae* exception. We reverse.

## FACTS

Eugene Jennings drove a garbage truck for Chambers Development Company (Chambers) Monday through Friday of each week. The truck was automated, picking up dumpsters and emptying their contents without requiring Jennings to perform any manual labor. Jennings died on a Wednesday, which was the one day of the week he had a shorter schedule, only picking up the trash at the more heavily used dumpsters. There is no evidence anything unusual or unexpected occurred on the day of his death, requiring any abnormal exertion.

On the morning of Jennings' death he made 8 stops, picking up 18 cans and making a last stop at the incinerator to dump his load. Jennings then drove his truck from the incinerator site towards Orangeburg. Approximately 30 to 45 minutes later he pulled his truck to the side of the road, where he was found slumped over the wheel, though still conscious, by an EMS worker. Jennings complained to her of upper right abdominal pain and lower back pain, which had begun at about 8:00 a.m.

Jennings was taken to the Bamberg County Hospital, where he later died as a result of a ruptured thoracic aneurysm. An autopsy also disclosed Jennings had "severe coronary artery disease."

The medical examiner concluded Jennings' aneurysm, at the lower portion of his aorta, was caused by "a long standing atherosclerosis." Jennings also suffered from hypertensive heart disease and renal disease, which exacerbated his condition. The medical examiner testified the aneurysm caused the aorta to leak, which generated Jennings' abdominal and back pains.

The single commissioner determined Jennings did not sustain a work related accident and denied Mrs. Jennings any

benefits. The commissioner rejected her contention that the "unexplained death" presumption alone was sufficient to establish the fact of an accident. The commissioner also held proffered testimony of both Mrs. Jennings and the EMS worker that Jennings told them his pain began at 8:00 a.m., but he continued to work in order to finish his route, was "hearsay not within any exception and ... irrelevant to a determination of the issues before the Commission." The full commission adopted the commissioner's decision in full.

The circuit court reversed, finding the proffered statements fell within the *res gestae* exception and were admissible. The circuit court applied the "unexplained death" presumption and found "as a matter of law that the unexplained death presumption does not require proof of a compensable injury but only that one or more of the work activities could result in compensable injury." The court held the commission erred, as a matter of law, in failing to apply this presumption.

## LAW/ANALYSIS

A reviewing court may reverse the decision of the workers' compensation commission if the decision is affected by an error of law or is unsupported by substantial evidence. S.C.Code Ann. § 1–23–380 (Supp.1997); *Gilliam v. Woodside Mills,* 319 S.C. 385, 461 S.E.2d 818 (1995); *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981). We conclude the commission properly rejected the "unexplained death" presumption under the facts of this case and its decision is supported by substantial evidence. We reverse the circuit court and reinstate the commission's order.

 "The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation." *Clade v. Champion Lab.,* 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998). For an injury to be compensable, it must be by accident arising out of and in the course of employment. *Baggott v. Southern Music, Inc.,* 330 S.C. 1, 496 S.E.2d 852 (1998). "An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the

resulting injury." *Clade,* 330 S.C. at 11, 496 S.E.2d at 857 (citing *Rodney v. Michelin Tire Corp.,* 320 S.C. 515, 518, 466 S.E.2d 357, 358 (1996)). An injury occurs "in the course of employment" if it happens "within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties...." *Baggott v. Southern Music, Inc.,* 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998). "In determining whether something constitutes an 'injury by accident' the focus is not on some specific event, but rather on the injury itself." *Stokes v. First Nat'l Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 250 (1991) (holding nervous breakdown precipitated by an extreme prolonged increase in work hours and additional job responsibilities was a compensable accident).

 An employee who becomes ill or dies of natural causes while at work does not suffer an accident arising out of employment because the condition is a natural result or consequence that might be termed normal and to be expected. *See Riley v. South Carolina State Ports Authority,* 253 S.C. 621, 172 S.E.2d 657 (1970). If an employee dies of a heart attack, cerebral hemorrhage, apoplexy or other injury to the blood vessels, he or she must show not only that the injury was in the course of employment but also that the death arose out of employment, in that it was brought about by unexpected strain or over-exertion, or as a result of unusual and extraordinary conditions of employment. *Kearse v. South Carolina Wildlife Resources Dep't,* 236 S.C. 540, 115 S.E.2d 183 (1960) (citing *Radcliffe v. Southern Aviation School,* 209 S.C. 411, 40 S.E.2d 626 (1946); and *Branch v. Pacific Mills,* 205 S.C. 353, 32 S.E.2d 1 (1944)). However, if such an injury results as a consequence of the ordinary exertion that is required in the performance of employment duties in the ordinary and usual manner, and without any outward untoward event, it is not compensable as an accident. *Fulmer v. South Carolina Elec. & Gas Co.,* 306 S.C. 34, 410 S.E.2d 25 (Ct.App.1991).

I. *The "Unexplained Death" Presumption*

 The "unexplained death" presumption is:
a natural presumption, or a presumption of fact, that one charged with the performance of a duty and injured while performing such duty, or found injured where his duty

required him to be, is injured in the course of, and as a consequence of, his employment.

*Packer v. Corbett Canning Co.,* 238 S.C. 431, 436, 120 S.E.2d 398, 400 (1961). The presumption is applied simply to establish that the injury occurred in the course of and as a consequence of employment. The presumption cannot be applied to establish the incident of accident. *Id.* at 438, 120 S.E.2d at 401.

 Although the "unexplained death" presumption is normally used to establish that an accident occurred in the course of and as a consequence of employment, it cannot be used to establish that an aneurysm was a compensable accident. An aneurysm in itself is not considered an accident for workers' compensation. It is a natural condition which only becomes a compensable accident if it was brought about by unexpected strain or over-exertion in the performance of the duties of employment or by unusual and extraordinary conditions in the employment. *See Jones v. Williamsburg County,* 245 S.C. 434, 141 S.E.2d 100 (1965); *Kearse v. South Carolina Wildlife Resources Dep't,* 236 S.C. 540, 115 S.E.2d 183 (1960). Consequently, the "unexplained death" presumption is not dispositive because the claimant cannot use the presumption to eliminate the test under which an aneurysm becomes a compensable accident.

The cases most closely on point are *Packer* and *Jones.* In *Packer* the employee was found dead at 7:00 a.m. at his place of employment. He was a night watchman, required to be on duty from 9:30 p.m. through 6:00 a.m. Packer was found in a shed with a wet concrete floor. There had been a severe electrical storm the previous night. He was found in a puddle of water approximately 6 feet from an electrical cord. The cord was 3 or 4 feet from the post housing the socket and it was disconnected.

The doctor who examined the body on site concluded Packer did not die from electrocution. A pathologist gave the cause of death as a combination of coronary arteriosclerosis with occlusion of the coronary artery and a myocardial infarction, with acute pulmonary congestion and edema. He also found no evidence of electric shock.

The court acknowledged Packer was found where the performance of his duties required him to be. The court noted,

however, Packer's duties were not associated with the pump to which the cord was connected. Because there was no evidence that the cord had been plugged into the socket or that Packer had been shocked, the court found insufficient evidence to sustain an award despite the "unexplained death" presumption. *Packer v. Corbett Canning Co.*, 238 S.C. 431, 120 S.E.2d 398 (1961).

The facts of *Jones* are even more similar. Jones was a dump truck driver for Williamsburg County. One morning another truck driver found Jones slumped over, unconscious, in the cab of his loaded truck. Jones died on the way to the hospital.

Testimony established Jones was engaged in his normal duties on the day of his death. He appeared to be fine at breakfast. Shortly after starting work that morning, he told a fellow worker he had a pain in the chest but was going on with his work. Jones had completed 7 or 8 trips in his truck before the fatal one. A few minutes before this trip, Jones was laughing and talking with co-workers. Other truck drivers testified their work was strenuous, the day hot, and the road dusty.

Jones's family physician testified Jones had diabetes that rendered him prone to heart trouble and Jones was likely to have a coronary failure at any time. The doctor opined Jones had died of a coronary occlusion probably precipitated by the exertion of driving the truck on the sandy road in the hot weather.

The court declined to award benefits. It concluded:

The evidence above summarized was quite adequate to support the conclusion that the work in which and the working conditions under which Mr. Jones was engaged at the time of his fatal seizure, although strenuous and uncomfortable, were usual and ordinary incidents of his employment. That the Commission so concluded is implicit in its finding that his death was not causally connected with or related to the work that he was doing, and was therefore not compensable as resulting from accident arising out of and in the course of his employment. That conclusion was factual; not lacking evidentiary support, it was binding upon the circuit court, whose judgment must therefore be reversed.

*Jones v. Williamsburg County*, 245 S.C. 434, 437, 141 S.E.2d 100, 102 (1965) (citations omitted). *See also Rhodes v. Guignard Brick Works*, 245 S.C. 304, 308, 140 S.E.2d 487, 488 (1965) ("The fact that due to a weakened heart condition, the exertion required for the ordinary performance of the work is too great for the particular employee, who undertakes to perform it, does not make it a compensable accident.").

The cases relied upon by the claimant are inapposite, because they apply the presumption in circumstances where the employee's death was clearly or inferentially not natural. *See Eagles v. Golden Cove, Inc.*, 260 S.C. 113, 194 S.E.2d 397 (1973) (bee sting); *Floyd v. W.O. Greene Plumbing & Heating Co.*, 255 S.C. 352, 179 S.E.2d 28 (1971) (employee found dead underneath tractor he was operating in 103 degree weather, without sweating, probably caused by heat stroke); *Jake v. Jones*, 240 S.C. 574, 126 S.E.2d 721 (1962) (drowning); *Buff v. Columbia Baking Co.*, 215 S.C. 41, 53 S.E.2d 879 (1949) (cause of death unknown, but sufficient evidence to sustain commission's finding of death by electrocution); *Owens v. Ocean Forest Club, Inc.*, 196 S.C. 97, 12 S.E.2d 839 (1941) (gunshot wound); *Suburban Propane Gas Co. v. Deschamps*, 298 S.C. 230, 379 S.E.2d 301 (Ct.App.1989) (gunshot).[1]

In contrast to these cases, Mr. Jennings died of natural causes. The fact of death by natural causes in the scope of employment does not raise a presumption that the death arose out of employment. The claimant had the burden of proving the death arose out of employment by establishing it was brought about by unexpected exertion or strain or by unusual and extraordinary conditions in employment. *Hoxit v. Michelin Tire Corp.*, 304 S.C. 461, 405 S.E.2d 407 (1991); *Kearse v. South Carolina Wildlife Resources Dep't*, 236 S.C. 540, 115 S.E.2d 183 (1960). The commission found Mrs. Jennings did not carry this burden.

▮▮▮▮▮ Whether there was any causal connection between the employment and the injury was a question of fact for the

---

1. Mrs. Jennings also relies on the case of *Davis v. By-Pass Auto Parts, Inc.*, 304 S.C. 75, 403 S.E.2d 133 (Ct.App.1991). Actually, in *Davis* the cause of death was known; the employee was found beneath a car that had crushed him. The issue before the court was whether the presumption would apply when employee's actions may have been outside of company policy.

commission. *Rhodes v. Guignard Brick Works,* 245 S.C. 304, 140 S.E.2d 487 (1965). The commission's decision must be affirmed if the factual findings are supported by substantial evidence in the record. *Minor v. Philips Prods.,* 329 S.C. 321, 494 S.E.2d 819 (1997). Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the commission reached. *McGuffin v. Schlumberger–Sangamo,* 307 S.C. 184, 414 S.E.2d 162 (1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the commission's finding from being supported by substantial evidence. *Hoxit v. Michelin Tire Corp.,* 304 S.C. 461, 405 S.E.2d 407 (1991). Where there is a conflict in the evidence, the commission's findings of fact are conclusive. *Id.*

 There is ample evidence to support the conclusion Jennings performed no work that involved any unexpected exertion or unusually stressful conditions. Dr. Nichols' testimony established the atherosclerosis which led to the ruptured aneurysm was longstanding and aggravated by his hypertension and renal disease. Jennings' general manager testified that Jennings' job did not involve moving any heavy objects, and there is no evidence in the record that there were any unexpected or extraordinary conditions at play that day. The claimant argues the evidence establishes Jennings cleaned around the cans and lifted heavy garbage on that day, but even if this were so, Mrs. Jennings testified such was his practice. If customary, the fact that due to his physical condition, "the exertion required by the ordinary performance of the work [was] too great" for Jennings does not make the injury a compensable accident. *DeBruhl v. Kershaw County Sheriff's Dep't,* 303 S.C. 20, 25, 397 S.E.2d 782, 785 (Ct.App. 1990).

Because we find the commission's findings are supported by substantial evidence, we must reverse the circuit court's decision.

## II. *Evidentiary Issues*

The claimant proffered testimony that Jennings said he became ill while working and did not stop working because he wanted to finish his route. The commission refused to admit and consider this testimony, and the circuit court reversed, finding that it fell within the *res gestae* exception to the

hearsay rule. Chambers argues the circuit court committed error by considering this testimony. Chambers also argues the circuit court incorrectly ruled the pictures of the dumpster sites taken the week before the commission hearing were admissible. However, in view of our prior ruling, we need not address these issues, since the proffered testimony only tends to establish that Jennings' death occurred in the course of employment, and, notwithstanding the pictures, substantial evidence supports the commission's conclusion that Jennings' death did not arise out of employment.

For the foregoing reasons, the order of the circuit court is reversed, and the final decision of the commission is reinstated.

**REVERSED.**

HEARN, J., concurs.

ANDERSON, J., concurs in result only.